UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CLARENCE E. BALDWIN,                )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 18-1872 (EGS)
                                    )
U.S. DEPARTMENT OF ENERGY,          )
                                    )
            Defendant.              )
_____)

# MEMORANDUM OPINION

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against his former employer, the U.S. Department of Energy ("DOE" or "defendant"). This matter is before the Court on Defendant's Motion for Summary Judgment, which is granted for the reasons discussed below.

## I. SUMMARY JUDGMENT STANDARD

The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted). "Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate." *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 6 (D.D.C. 2014) (citations omitted).

An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they

"describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). The opposing party cannot survive summary judgment with "[m]ere allegations or denials in [his] pleadings[.]" *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). Rather, he "must come forward with 'specific facts' demonstrating a genuine issue." *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 19 (D.D.C. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

## II. DOE'S ASSERTIONS OF FACT ARE CONCEDED

DOE filed its summary judgment motion (ECF No. 17) on April 26, 2019, along with a supporting declaration and Vaughn Index (ECF No. 17-10), among other exhibits. The Court issued an order (ECF No. 18) on April 29, 2019, advising plaintiff of his obligations under the Federal Rules of Civil Procedure and the local rules of this Court to respond to the motion. The order specifically warned plaintiff that, if he did not respond by May 29, 2019, the Court would treat DOE's motion as conceded and, if warranted, enter judgment in DOE's favor. Upon review of defendant's Amended Notice of Service (ECF No. 19), the Court issued an order (ECF No. 20) extending plaintiff's opposition deadline to July 26, 2019.

Despite the opportunity provided to plaintiff "to properly address [DOE's] assertion[s] of fact," Fed. R. Civ. P. 56(e), plaintiff has not filed an opposition or other response to DOE's motion. Consequently, the assertions set forth in Defendant's Statement of Material Facts Not As To Which There Is No Genuine Dispute (ECF No. 17-1) and DOE's supporting declaration are undisputed. *See* Fed. R. Civ. P. 56(e)(2) (authorizing court, when non-moving party "fails to

properly address another party's assertion of fact as required by Rule 56(c)," to "consider the fact undisputed for purposes of the motion"); LCvR 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues.").

Nevertheless, "[a] defendant moving for summary judgment must . . . 'discharge the burden the rules place upon [it]: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.'" *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring)) (additional citation omitted). "The burden that the movant 'always bears' is that of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. at 93-94 (quoting *Celotex*, 477 U.S. at 323). Here, DOE meets its burden.

III. PLAINTIFF'S FOIA REQUEST

Plaintiff began his employment as a Loan Specialist for DOE on February 19, 2017, and he received a Notice of Termination during Probationary Period on January 19, 2018. *See* Compl., Attach. 2 at 1. Termination would have been effective January 19, 2018 but for plaintiff's resignation on that same date. *See id.*, Ex. 6.

On March 5, 2018, plaintiff submitted a FOIA request to DOE seeking copies of email exchanges he had with seven DOE employees (Robert Marcum, Maher Akladus, Sarika Moudgil, Jeffrey Walker, Woody Stevenson, Sara Prather and Chyness Thompson-Neal) between March 1, 2017 and January 19, 2018. Compl. ¶¶ 1, 3; *see id.*, Ex. 1 (FOIA request); *see*

3

*also* Def.'s Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. (ECF No. 17-2, "Def.'s Mem."), Decl. of Alexander C. Morris (ECF No. 17-3, "Morris Decl.") ¶ 24. In addition, plaintiff sought information about DOE's "budget for training for the loan program office and the loan administrators [f]or . . . fiscal years 2015-2016-2017-2018," and "all task[s] created by Loan [A]dministrator Clarence Baldwin on the following [d]ates[:] August 22-24, 2017[,] October 18, 2017 and January 12, 2018 . . . within the [QuickSilver] system." Compl., Ex. 1. DOE assigned the request a tracking number, HQ-2018-00817-F. Morris Decl. ¶ 8; *see id.*, Ex. B.

IV. DOE's SEARCHES FOR RESPONSIVE RECORDS WERE REASONABLE

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citation and internal quotation marks omitted). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 124, 127 (D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). Here, the declarant asserts that "DOE searched all locations likely to contain documents responsive to [p]laintiff's FOIA request." Morris Decl. ¶ 41.

DOE's Office of Public Information ("OPI") is responsible for reviewing and processing FOIA requests to DOE. *See id.* ¶¶ 3, 14, 25. The declarant explains that DOE's Loan Programs Office ("LPO") and Office of the Chief Human Capital Officer ("HC") were the places where records responsive to plaintiff's FOIA request likely would be found:

> 17. DOE's decision to search LPO . . . was based on OPI's understanding that Plaintiff was a former LPO employee and Plaintiff's request sought communications between Plaintiff and certain LPO employees listed in [the] FOIA request. Therefore all Plaintiff's communications with those employees and documents related to his work at LPO would be contained within LPO. In addition, the QuickSilver system is a document management system within LPO and information regarding LPO's budget . . . also would be found within LPO's accounting files.
>
> 18. DOE's decision to search HC for responsive documents was based on OPI's understanding that two of the custodians listed in Plaintiff's FOIA request were HC employees and any communication between Plaintiff and [these] employees would be contained within HC.

*Id*. ¶¶ 17-18.

"LPO staff conducted searches of the email accounts of [p]laintiff and the named LPO employees – Robert Marcum, Akladus Maher, Sarika Moudgil, Jeffrey Walker, and Woody Stevenson – to capture any communications to or from Plaintiff and those individuals during the identified date ranges[.]" *Id*. ¶ 22. In addition, staff searched QuickSilver to locate any tasks created by plaintiff during the date ranges he specified and to locate LPO's budgets from 2014 through 2018. *Id*. These searches yielded 39 documents. *Id*.

Similarly, HC staff "conducted searches of the email accounts of the named HC employees – Sara Prather and Chynees Thompson-Neal – to capture any communications to or from Plaintiff and those individuals during the identified date ranges." *Id*. ¶ 23. These searches yielded six responsive documents. *Id*. These searches, the Court concludes, were reasonable under the circumstances of this case.

V. FOIA EXEMPTIONS 5 AND 6

DOE released records to plaintiff in three batches. First, on July 16, 2018, DOE released 13 documents (63 pages of records) in their entirety. Morris Decl. ¶ 27. Second, on August 28,

5

2018, it released six documents (23 pages of records) in their entirety. *Id*. ¶ 28. Third, on October 18, 2018, DOE notified plaintiff that it had identified 25 responsive documents (71 pages of records) and released seven documents in their entirety. *Id*. ¶ 30. From the 18 remaining documents DOE redacted certain information under FOIA Exemptions 5 and 6. *Id*. When DOE discovered that it inadvertently omitted one document from the third release, DOE released it in its entirety on April 19, 2019. *Id*. ¶¶ 31-32.

A. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). Federal government agencies can avail themselves of civil discovery privileges, including the deliberative process and attorney-client privileges, to withhold information otherwise responsive to a FOIA request. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).

1. Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role

6

played by the documents at issue in the course of that process." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868). A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975).

DOE withholds from a portion of one document, described as an "Email chain," Vaughn Index (Doc. No. 10), under Exemption 5 because it contains "intra-agency pre-decisional information involv[ing] DOE employees . . . regarding open issues . . . before DOE could make a decision regarding a transfer request." Morris Decl. ¶ 35. According to the declarant, the withheld information included "deliberative discussions as part of a process . . . lead[ing] to the agency's final policy decision about the matter." *Id*. He explains that the withheld information "does not represent final agency action and its release would compromise the deliberative process by which the government makes its decision." *Id*.

### 2. Attorney Client Privilege

"Exemption 5 protects, as a general rule, materials which would be protected under the attorney-client privilege[.]" *Coastal States Gas*, 617 F.2d at 862 (citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252–55 (D.C. Cir. 1977)). For example, "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," *Tax Analysts*, 117 F.3d at 618 (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984), can be protected under Exemption 5. "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *In re Lindsey*, 148 F.3d 1100, 1104 (D.C. Cir. 1998) (per curiam) (quoting *Tax Analysts*, 117 F.3d at 618 (additional citation omitted).

DOE withholds from two documents certain communications between an agency

7

employee and DOE's outside legal counsel. Morris Decl. ¶ 37; *see* Vaughn Index (Doc. Nos. 5 and 7). The declarant explains that DOE employees sought legal advice which outside counsel provided "regarding withdrawal of funds under a loan agreement." Morris Decl. ¶ 37. If such information were released, the declarant states, DOE staff would be deprived "of the benefit of confidential advice . . . in legal matters and agency decision-making [which] would have a chilling effect" on their ability to discuss matters frankly and openly with outside legal counsel. *Id*.

Based on the declarant's representations and Vaughn Index, the Court concludes that DOE properly withholds privileged information under Exemption 5.

B. Exemption 6

Under Exemption 6, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). According to the declarant, *see* Morris Decl. ¶ 39, DOE withholds from 18 documents the mobile telephone numbers of DOE employees and private individuals, *see, e.g.*, Vaughn Index (Doc. No. 9), and a conference call phone number, *see id*. (Doc. No. 15), from email chains.

The term "similar files" is "interpreted broadly to include those detailed Government records on an individual which can be identified as applying to that individual." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004) (citations and internal quotation marks omitted)). The Court finds that the emails described in DOE's declaration and Vaughn Index are "similar files" for purposes of Exemption 6 as they "can be identified as applying to [a particular] individual." *U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted); *see, e.g., Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019)

8

(concluding that "government records containing personal email addresses constitute 'similar files'"); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 623–24 (S.D.N.Y. 2018) (concluding that emails "contain the names and email addresses of agency officials, and, thus, can be identified as applying to those individuals" are "similar files" for purposes of Exemption 6). The same can be said for mobile telephone numbers. *See, e.g., Highland Capital Mgmt., LP v. IRS*, No. 3:18-CV-0181-G, 2019 WL 4748270, at *17 (N.D. Tex. Sept. 30, 2019) (finding that "personal telephone number of one of the contractor's supervisors . . . applies to a particular individual" and therefore constitutes a "similar file" for purposes of Exemption 6); *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 346 F. Supp. 3d 61, 86 (D.D.C. 2018) (concluding that redacting employee's work email address and mobile phone number under Exemption 6 was proper).

DOE may withhold telephone numbers from these email chains only if their disclosure "would constitute a clearly unwarranted invasion of personal property." *Wash. Post Co.*, 456 U.S. at 598. Here, the Court "weigh[s] the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citations and internal quotation marks omitted). The interest must be substantial, meaning "one that is 'more than *de minimis*.'" *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, 405 F. Supp. 3d 127, 143 (D.D.C. 2019) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).

DOE's declarant states that the individuals whose mobile telephone numbers are withheld "have a significant personal privacy interest in minimizing unwarranted or unsolicited intrusion and harassment" if the numbers were disclosed. Morris Decl. ¶ 39. And "public release of [the]

9

telephone conference number would potentially allow uninvited third parties to illegally listen to confidential internal calls while also learning private information about authorized participants on the conference call." Vaughn Index (Doc No. 15). Therefore, DOE posits, "[a]ccess to this withheld information would violate the [individuals'] privacy interest . . . and the private harm would outweigh any public gain from disclosure." Morris Decl. ¶ 39.

In the face of individuals' privacy interest, plaintiff has identified no public interest in disclosure, and the Court finds that no public interest is readily apparent. Accordingly, the Court concludes that DOE properly withholds the mobile telephone numbers and conference call number from the email chains described in the Vaughn Index. *See Pejouhesh v. U.S. Postal Serv.*, No. 17-CV-1684, 2019 WL 1359292, at *6 (D.D.C. Mar. 26, 2019) (concluding that "balancing is not difficult where, as here, Plaintiff has not provided any explanation regarding the public interest in disclosure, and no such interest is apparent"); *see also Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 879 ("[S]omething, even a modest privacy interest, outweighs nothing every time.").

VI. SEGREGABILITY

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation omitted).

DOE's Vaughn Index identifies the particular information withheld from each email chain and adequately explains why the information has been redacted under Exemption 5 or 6.

Further, the declarant avers that all segregable information has been released. *See* Morris Decl. ¶¶ 36, 38, 40. Based on these submissions, which plaintiff has not challenged, the Court concludes that DOE has released all reasonably segregable information.

VII. CONCLUSION

The Court finds that DOE's searches for records responsive to plaintiff's FOIA request were reasonable, that its decision to withhold information under FOIA Exemptions 5 and 6 was reasonable, and that DOE released all reasonably segregable information. Therefore, the Court grants DOE's summary judgment motion and issues an Order separately.

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**January 23, 2020**